**DARLING, Appellant,**

v.

**FAIRFIELD MEDICAL CENTER, Appellee.**

[Cite as *Darling v. Fairfield Med. Ctr.* (2001), 142 Ohio App.3d 682.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 00CA75.

Decided July 16, 2001.

*Terri B. Gregori,* for appellant.

*Gregory D. Rankin,* for appellee.

William B. Hoffman, Judge.

On May 29, 1998, appellant, Linda Darling, was injured when she fell from a treadmill at a facility operated by appellee, Fairfield Medical Center. While walking on the treadmill, appellant momentarily closed her eyes; thereafter, she lost her balance and fell, striking an adjacent treadmill. On June 16, 1999, appellant filed a complaint against appellee for negligence. Appellee filed a motion for summary judgment on September 15, 2000. By memorandum of

decision and entry filed October 31, 2000, and November 15, 2000, respectively, the trial court granted the motion.

Appellant filed an appeal and this matter is now before this court for consideration. The assignment of error is as follows:

"The trial court erred in granting defendant's motion for summary judgment"

Appellant claims that the trial court erred in granting summary judgment to appellee. Specifically, appellant claims that the doctrine of primary assumption of the risk does not apply, that genuine issues of material fact regarding appellee's neglect exist, and that the issue of negligence is a jury question.

Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56:

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 448, 663 N.E.2d 639, 640–641.

As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

The trial court found as a matter of law that it was not appellee's neglect that was the proximate cause of appellant's fall, but rather appellant's closing her eyes. The trial court further found that appellant assumed the risk of using a treadmill with no side handrails and that any defect in the equipment was open and obvious. Additionally, the trial court determined that appellant was a sports participant; therefore, the doctrine of primary assumption of the risk barred recovery.

It is uncontested that appellant was a business invitee of appellee and appellee owed appellant the duty to exercise reasonable care to protect her from an unreasonable risk of physical harm. *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 12 O.O.3d 321, 390 N.E.2d 810. In Jackson, the Ohio Supreme Court stated:

"The owner or occupier of premises is not an insurer of the safety of his invitees, but he does owe a duty to exercise ordinary or reasonable care for their protection. *S.S. Kresge Co. v. Fader* (1927), 116 Ohio St. 718 [158 N.E. 174];

*Railroad Co. v. Harvey* (1907), 77 Ohio St. 235 [83 N.E. 66]. This rule applies with equal force to proprietors of amusement parks. *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175 [147 N.E. 86]. But, the obligation of reasonable care is an extensive one, applicable to everything that threatens an invitee with an unreasonable risk of harm. Prosser on Torts 393 (4 Ed.1971), Section 61. This includes the duty to warn patrons of dangerous conditions known to, or reasonably ascertainable by, a proprietor which a patron should not be expected to discover or protect himself against. Accordingly, the proprietor's duty is normally predicated upon his superior knowledge of a dangerous condition on his premises. Since a warning eliminates the disparity between the proprietor's and patron's knowledge of the dangerous condition, it is usually sufficient to discharge the proprietor of his duty to exercise reasonable care." *Id.* at 359, 12 O.O.3d at 322, 390 N.E.2d at 813.

Appellee operates a satellite physical therapy facility known as the Sports Clinic. In September, 1997, following knee surgery, appellant started a rehabilitation program with appellee. Appellant was instructed by Cynthia Fintel, an agent of appellee, on a treadmill without side rails.[1] Fintel's instructions on the use of the treadmill included five minute's walking time. There was no instruction on fall prevention. After the expiration of the physical therapy, appellant signed up for an "independent fitness" program at $10 per month and signed a general release form on November 10, 1997. The only members of the independent fitness program were physical therapy patients whose prescriptions had expired. The clinic's purpose was to provide physical therapy. The program was designed to allow patients to continue their rehabilitation with some level of professional support even after insurance benefits ran out. Appellant continued to use appellee's equipment and accepted advice from the staff until her heart attack on March 17, 1998. After heart surgery, appellant returned to appellee's facility on May 28, 1998, the day before the incident, and resumed her exercise routine. Appellant was given advice on her heart rate by appellee's staff. Fintel acknowledged that patients who are at an increased risk for becoming unstable should be placed on a treadmill with safety side rails. Fintel disputed that a fifty-seven-year-old woman with asthma, back surgery, knee surgery, and a cardiac condition (such as appellant) was at increased risk for becoming unstable.

Appellant had operated a treadmill prior to her rehabilitation therapy, as she had one in her basement.[2]

Appellant described her fall from the treadmill as follows:

---

1. A treadmill with side rails was available, but appellant claimed that it was for walking backwards and that she never used it because she never had to walk backwards.

2. Appellant had used a treadmill with no side rails at home since 1995.

"Q. Could you describe for me in as much detail as you can what you recall about going to the sports clinic that day and how this incident occurred? * * *

"A. Well, if it was any other day, I would be using the other equipment as well. I got on the treadmill. I was listening to a radio show, one of those old time radio shows on head phones and walking. I usually walked with my arms to the side, regular walking motion, just like you would normally walk anyplace else, brisk walking, not a slow stroll, but a brisk walking. I closed my eyes for a second—for a second on something that was being said, and I lost my balance and fell off. I landed on the machine next to me, and I was very angry because I had fallen off. I closed my eyes for a second to concentrate on something that was being said. I was very angry and embarrassed and the adrenaline started flowing.

" * * *

"Q. Why do you think you fell that day?

"A. I lost my balance."

At the time of the incident, appellant was wearing headphones and explained the reason for closing her eyes as follows:

"Q. Tell me again what caused you to close your eyes.

"A. There was a lot of noise going on. I wanted to concentrate on what was being said at that second, so I closed my eyes for a second.

"Q. Had you ever walked on the treadmill with your eyes closed before this particular day?

"A. No.

"Q. In hindsight, do you believe closing your eyes contributed to your fall?

"A. Probably."

 Appellant had never fallen off a treadmill before and did not use the front handrail because she wished to obtain a "better aerobic workout" by using her arms. Appellant stated that the staff did nothing to cause her fall, but could have advised her "Don't close your eyes." Appellant claimed, "If it would have had side bars, I would have knocked against the side bars and got my balance back." Appellant's affidavit, filed in response to the motion for summary judgment, adds the following to her narrative about the incident:[3]

---

3. Appellee asserts that appellant's affidavit is inconsistent with her deposition in that in her deposition appellant never claimed she made a grab for a nonexistent side rail. A nonmoving party cannot defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit. The fact that appellant made no mention of an attempt to grab a (nonexistent) side rail in her deposition but did so in her affidavit is not a contradiction.

"14. As I walked and listened, I was trying to concentrate on something that was being said. I closed my eyes for at most a second or two and I began to lose my balance. I opened my eyes but could not regain my balance. I began to fall back and to the right side. I reached out to grab something to catch myself but there was nothing there to grab. I could see the front rail but there was no way to reach it as I was falling away from it. It was as if the treadmill propelled me off and I fell to the ground striking my right shoulder and back on the base of the treadmill next to mine."

Appellant also presented the affidavit of William Herbert, Ph.D., an expert in exercise physiology. In his affidavit, Dr. Herbert stated:

"7. As well, the Sports Clinic failed to set up the treadmill in compliance with the mandates set forth in the manufacturer's operation manual and also failed to provide Mrs. Darling with the cautions and warnings contained in that manual. For instance, the Clinic failed to set the treadmills up with appropriate clearance and floor space between other equipment and the walls, as required by the manufacturer's manual and this was unreasonable.

" * * *

"11. The fact that Mrs. Darling momentarily closed her eyes prior to the fall does not change my opinion or the obligations of the Sports Clinic. Mrs. Darling had a medical history that made her obviously susceptible to instability. In fact, every person using a treadmill at the Sports Clinic was susceptible to instability by virtue of the injury or illness that brought them there. The Clinic's patients were not young, healthy members of a private health club. These patients, including Mrs. Darling, had the potential to become unstable and lose their balance for countless reasons ranging from becoming fatigued, dizzy or having a knee buckle to tripping over a shoestring left untied. The Clinic knew or should have known this and had an obligation to provide side safety rails for its treadmills to prevent significant injury to a patient, like Linda Darling, who loses her balance."

Dr. Herbert's opinion is unchallenged by appellee save for the challenge to Dr. Herbert's lack of expertise and qualifications to render such an opinion. Apart from the reasons for the fall, Dr. Herbert's opinion raises the issue of proximate cause for appellant's injury. In *Ross v. Nutt* (1964), 177 Ohio St. 113, 29 O.O.2d

Rather, it is an omission later supplemented by her affidavit. While the omission may adversely affect her credibility at trial, appellant's affidavit does not directly contradict her deposition testimony. When considering it in the light most favorable to appellant as required by Civ.R. 56, we must presume that appellant attempted to grab a (nonexistent) side rail during her fall.

313, 203 N.E.2d 118, the Ohio Supreme Court defined "proximate cause" as follows:

"For an act to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act. *Foss–Schneider Brewing Co. v. Ulland* [1918], 97 Ohio St. 210 [119 N.E. 454]. To find that an injury was the natural and probable consequence of an act, it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act." *Id.* at 114, 29 O.O.2d at 313, 203 N.E.2d at 120.

■ There may be more than one proximate cause of an injury. Appellant's fall initially may have been caused by closing her eyes. But appellee's failure to provide side rails on the treadmill or appellee's failure to follow the manufacturer's operation manual regarding warnings and/or placement also may have proximately caused her injuries. It is for the trier of fact to determine proximate cause and to assess the comparative negligence of the parties in causing the injuries.

■ As stated above, appellee's duty to its business invitees is to exercise ordinary or reasonable care to protect them from an unreasonable risk of physical harm. Although the duty always remains the same, the required level of ordinary or reasonable care can vary depending upon the circumstances. The uniqueness of the potential invitees of the premises' owner or occupier is one variable.

■ Unlike invitees of most health club facilities, the invitees of appellee's facility included physical therapy patients. Those patients could be expected to lose balance or trip and fall during use of the treadmill. Reasonable minds could differ on whether it was unreasonable for appellee not to provide side rails on the treadmills, given its unique class of invitees. This circumstance, when coupled with appellant's expert opinion and the other evidence noted above is sufficient to place this issue in front of the trier of fact.

■ Appellee argues that a person who exercises on a treadmill at a health facility is taking on the primary assumption of the risk. Primary assumption of risk "concerns cases where there is a lack of duty owed by the defendant to the plaintiff." *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 174, 451 N.E.2d 780, 783. "The term 'primary assumption of risk' really translates into no duty, ergo no negligence, and has nothing to do with the doctrine of assumption of risk as a defense against the negligence of a defendant who has a duty to the plaintiff." *Dailey v. Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App.3d 39, 18 OBR 108, 480 N.E.2d 110.

■ Appellee's facility, as previously stated, was a controlled medical rehabilitation facility where only health care patients were permitted to continue in an exercise program, which was monitored by appellee's staff. It is unlike a ride at an amusement park or attendance at a sporting event. The very nature of the closed environment sets this facility apart from commercially advertised spas and health clubs. We find that the doctrine of primary assumption of the risk is not applicable, but that the issues of breach of duty, proximate cause, and comparative negligence are viable.

Appellant's sole assignment of error is sustained.

The judgment of the Fairfield County Court of Common Pleas is hereby reversed, and the matter remanded for further proceedings consistent with this opinion and the law.

*Judgment reversed*
*and cause remanded.*

GWIN, P.J., concurs.

FARMER, J., dissents.

FARMER, J., dissenting.

Although I concur that there may be more than one proximate cause in the incident sub judice, I respectfully dissent from the majority's view that this matter should be remanded for trial on the issue of the use of the treadmill. I would find that genuine issues of material fact exist only on the issue of the placement of the treadmills as is stated in Dr. Herbert's opinion, quoted above.

I believe the majority treads on thin ice when it seeks to superimpose upon a business a higher standard of care toward invitees because it is allied with a medical provider. To assume that any health club should have to go so far as to warn treadmill users that closing their eyes might make them lose their balance is to go one step beyond the pale. Medical facilities can be charged with the restricted standard of care toward business invitees without any heightened responsibility when the facility conducts an ordinary nonmedical function, *e.g.,* ATM machine or a McDonald's restaurant on premises, or cooperation with a YMCA facility.

I would reverse on the sole issue of proximate cause and placement of the treadmill.