OPINION
{¶ 1} Plaintiff-appellant, Joyce A. Marcum, individually and as administrator of the estate of Johnny E. Turner, appeals from a consolidated judgment of the Franklin County Court of Common Pleas, granting the summary judgment motions of Tracy Campbell and Colonial Insurance Company of Wisconsin ("Colonial") and denying plaintiff's summary judgment motion. Because we find no reversible error, we affirm.
 {¶ 2} In the early morning of November 25, 1998, Johnny Turner and Tracy Campbell, after earlier wagering $100, raced vehicles on U.S. 40 in Licking County, Ohio, to determine if the vehicle each drove could outrace the other's vehicle. At the end of the race, Campbell, who was traveling at a high rate of speed, struck Turner, who had stopped near the finish line ahead of Campbell. Turner died as a result of injuries suffered in the collision. According to Turner's former fiancée, prior to the street race, Turner, who had been drinking during the evening prior to the street race, appeared intoxicated. Campbell also had been drinking during the evening prior to the street race.
 {¶ 3} On November 22, 2000, plaintiff, Turner's mother, individually and as administrator of Turner's estate, filed a complaint in the Franklin County Court of Common Pleas (C.P.C. No. 00CVC11-10408), alleging Campbell failed to maintain an assured clear distance prior to striking Turner's vehicle. Plaintiff also claimed Turner qualified as an insured under a policy issued to Marcum by Colonial and plaintiff sought to recover under this policy. Additionally, plaintiff sought damages associated with bereavement and economic losses on behalf of herself, Turner's brothers, Turner's sister, and Turner's minor son. In addition, plaintiff sought a declaration concerning the rights and responsibilities of the parties under the insurance contract issued to Marcum.
 {¶ 4} On October 9, 2001, in C.P.C. No. 01CVH10-9869, Colonial sought a declaratory judgment concerning the rights and obligations of the parties under a Colonial automobile insurance policy that was issued to Campbell by Colonial. In its complaint, Colonial contended that, according to the policy's terms, Campbell was not entitled to liability coverage because, at the time of the accident, Campbell was engaged in a competitive event, specifically a drag race.
 {¶ 5} On November 8, 2001, the parties jointly moved the trial court to consolidate C.P.C. No. 00CVC11-10408 with C.P.C. No. 01CVH10-9869; the trial court granted the parties' joint motion for consolidation and consolidated the case under C.P.C. No. 00CVC11-10408.
 {¶ 6} On December 14, 2001, plaintiff moved for summary judgment, arguing plaintiff, as a matter of law, was entitled to recovery under the insurance contract between Campbell and Colonial. On January 4, 2002, Colonial filed its own motion for summary judgment, arguing Campbell was not entitled to coverage under the insurance contract between Campbell and Colonial. On March 12, 2002, plaintiff filed a supplemental motion for summary judgment, arguing Campbell was negligent per se for failing to maintain an assured clear distance. On May 20, 2002, Colonial moved for summary judgment in C.P.C. No. 00CVC11-10408, arguing plaintiff was not entitled to coverage under the policy issued to her. On May 20, 2002, Campbell moved for summary judgment, arguing an absence of duty on the basis of primary assumption of risk.
 {¶ 7} On July 23, 2002, the trial court granted the summary judgment motions of Campbell and Colonial and the trial court denied plaintiff's summary judgment motion. On August 20, 2002, plaintiff appealed.
 {¶ 8} On March 3, 2003, one day prior to oral arguments in this case, Colonial moved to dismiss that portion of plaintiff's appeal related to C.P.C. No. 01CVH10-9869 because, according to Colonial, plaintiff failed to appeal the trial court's judgment in C.P.C. No. 01CVH10-9869. Plaintiff opposed Colonial's motion to dismiss and, on March 10, 2003, plaintiff moved for leave to file amended notices of appeal and to consolidate the appellate proceeding under a single case number.
 {¶ 9} In this appeal, plaintiff assigns the following errors:
 {¶ 10} "1. The Trial Court erred in failing to apply the law of assured clear distance to the facts of the case as a matter of law.
 {¶ 11} "2. The Trial Court erred in applying the doctrine of primary assumption of risk as a matter of law to the operation of motor vehicles.
 {¶ 12} "3. The Trial Court erred in granting summary judgment, failing to find a fact issue was reasonably raised by the evidence whether primary assumption of risk should be applicable on the facts of this case.
 {¶ 13} "4. The Trial Court erred in finding exclusionary language of the insurance contract excluded insurance coverage for Defendant Campbell.
 {¶ 14} "5. The Trial Court erred in failing to find Plaintiff Joyce Marcum had coverage under her own uninsured motorist policy of insurance with Defendant Colonial Insurance for $12,500 due to death of her son caused by an uninsured/underinsured motorist."
 {¶ 15} Prior to addressing the merits of plaintiff's appeal, we first address Colonial's motion to dismiss the portion of this appeal that concerns C.P.C. No. 01CVH10-9869. According to Colonial, because plaintiff failed to timely appeal C.P.C. No. 00CVH10-9869, this court lacks subject matter jurisdiction to consider matters related to that case and, as a corollary, because C.P.C. No. 00CVH10-9869 was not appealed, matters adjudicated in that case should have res judicata effect. See, e.g., State v. Lindsey, Brown App. No. CA2002-02-002, 2003-Ohio-811, at ¶ 21, appeal not allowed, 99 Ohio St.3d 1453,2003-Ohio-3396, quoting Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus ("[t]he doctrine of res judicata is defined as a `valid, final judgment rendered upon the merits [that] bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' ").
 {¶ 16} For her part, plaintiff does not deny she failed to file a notice of appeal in C.P.C. No. 01CVH10-9869; rather, plaintiff asserts that, based on plaintiff's assigned errors in this appeal that relate to both common pleas court cases, it is evident plaintiff intended to appeal the judgments in both C.P.C. Nos. 00CVC11-10408 and 01CVH10-9869. Therefore, relying on Natl. Mut. Ins. Co. v. Papenhagen (1987),30 Ohio St.3d 14, plaintiff contends her failure to file separate notices of appeal was merely a technical error and, rather than dismissing the appeal in C.P.C. No. 01CVH10-9869, this court should grant plaintiff's motion seeking leave to file separate notices of appeal that relate back to the date of filing of plaintiff's original notice of appeal on August 20, 2002. Moreover, plaintiff further contends this court should consolidate the appeals from C.P.C. Nos. 01CVH10-9869 and 00CVC11-10408.
 {¶ 17} R.C. 2505.04 provides, in pertinent part, that "[a]n appeal is perfected when a written notice of appeal is filed, in the case of an appeal of a final order, judgment, or decree of a court, in accordance with the Rules of Appellate Procedure[.]"
 {¶ 18} Under App.R. 4(A), "[a] party shall file the notice of appeal required by App.R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure." See, also, App.R. 14(B) (appellate court may not enlarge or reduce the time for filing a notice of appeal).
 {¶ 19} As observed in Haynes v. Oviatt (July 11, 1991), Cuyahoga App. No. 58915, "App.R. 4(A) requires that an appeal be filed within thirty days of the entry of the judgment appealed from. This time requirement is jurisdictional and may not be extended." See, also, Ross v. Harden (1982), 8 Ohio App.3d 34 ("the filing requirements regarding the notice of appeal are mandatory and jurisdictional"); Allman v. Allman (Oct. 17, 2001), Licking App. No. 01-CA-00053 ("[a] failure to file a timely notice of appeal in a civil case is fatal").
 {¶ 20} Here, plaintiff referenced only one case number, C.P.C. No. 00CVC11-10408, in the caption of her August 20, 2002 notice of appeal. Moreover, in the body of plaintiff's notice of appeal, plaintiff simply stated she "hereby appeal[ed] the decision and entry of July 22, 2002" with no references to either C.P.C. No. 00CVC11-10408 or 01CVH10-9869. Therefore, because plaintiff only referenced C.P.C. No. 00CVC11-10408 in the caption of her August 20, 2002 notice of appeal and there are no references in the body of plaintiff's appeal notice concerning either C.P.C. No. 00CVC11-10408 or 01CVH10-9869, we find plaintiff's August 20, 2002 notice of appeal only concerned C.P.C. No. 00CVC11-10408, notwithstanding plaintiff's arguments to the contrary. See App.R. 3(D) ("[t]he notice of appeal shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken").
 {¶ 21} Moreover, we find plaintiff's reliance on Papenhagen to be unpersuasive. See Papenhagen at 14, syllabus (holding an appellate court abused its discretion by striking and refusing to reinstate a timely filed notice of appeal on the sole basis that the notice of appeal erroneously combined on a single form a notice of appeal from two or more consolidated cases, where the appellant promptly demonstrated the error was inadvertent and done in good faith). In Papenhagen, the appellant listed two case captions in the notice of appeal; here, plaintiff referenced only one case, C.P.C. No. 00CVC11-10408. By referencing only C.P.C. No. 00CVC11-10408 in her notice of appeal, plaintiff informed the parties and this court of plaintiff's intention of appealing this specified judgment. See Papenhagen at 16 ("[t]he notice of appeal * * * though technically incorrect, fulfilled its basic purpose of informing the parties and the court, in a timely manner, of appellant's intention of appealing a specified judgment").
 {¶ 22} Furthermore, because the time in which to perfect an appeal in a civil case is jurisdictional, Haynes; Ross at 34, we cannot agree with plaintiff's contention that her failure to file a notice of appeal concerning C.P.C. No. 01CVH10-9869 is simply a technical error. Additionally, because under App.R. 14(B) we are prohibited from enlarging the time for filing a notice of appeal, we find plaintiff's motion for leave to file separate notices of appeal that relate back to the date of filing of plaintiff's August 20, 2002 notice of appeal is not well-taken.
 {¶ 23} Therefore, based on the foregoing, we find persuasive Colonial's motion to dismiss that portion of this appeal that pertains to C.P.C. No. 01CVH10-9869. Furthermore, because we find the trial court's judgment in C.P.C. No. 01CVH10-9869 was not timely appealed, we agree with Colonial that this judgment should have preclusive effect among the parties to that case.
 {¶ 24} Accordingly, we grant Colonial's motion to dismiss the portion of this appeal that concerns C.P.C. No. 01CVH10-9869. Furthermore, we deny plaintiff's motion for leave to file separate notices of appeal that relate back to the date of filing of plaintiff's August 20, 2002 notice of appeal. Finally, having determined only C.P.C. No. 00CVC11-10408 is properly before this court, we therefore deny plaintiff's motion to consolidate appeals from C.P.C. Nos. 01CVH10-9869 and 00CVC11-10408.
 {¶ 25} Having determined only C.P.C. No. 00CVC11-10408 is properly before this court, in this appeal, we will therefore only address those assignments of error that pertain to the trial court's granting of summary judgment in C.P.C. No. 00CVC11-10408. Consequently, because plaintiff's fourth assignment of error, which pertains to Campbell's automobile insurance coverage, concerns a matter resolved by the trial court's judgment in C.P.C. No. 01CVH10-9869, we will not address it here.
 {¶ 26} Appellate review of summary judgment motions is conducted under a de novo standard. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 27} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421, 430; Civ.R. 56(E).
 {¶ 28} Because plaintiff's first, second, and third assignments of error interrelate, we jointly address them.
 {¶ 29} Plaintiff's first assignment of error asserts the trial court erred, as a matter of law, when it failed to apply the law of assured clear distance to the facts of this case. Plaintiff's second and third assignments of error concern the doctrine of primary assumption of risk, as a matter of law, and the trial court's application of this doctrine to a statutorily imposed duty and to the facts of the case.
 {¶ 30} Under R.C. 4511.21(A), "[n]o person shall operate any motor vehicle * * * in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." In Pond v. Leslein (1995), 72 Ohio St.3d 50, 52, the court observed that "Ohio case law has consistently held that a person violates the assured clear distance ahead statute if `there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.' * * * Thus, a driver violates the statute as a matter of law if the party invoking the statute presents uncontroverted evidence establishing all of the elements necessary to constitute a statutory violation." (Citations omitted.)
 {¶ 31} Therefore, arguing the evidence establishes the vehicle Turner drove was stationary, reasonably discernible and did not suddenly appear in Campbell's path, plaintiff asserts Campbell's failure to maintain an assured clear distance constituted negligence per se under R.C. 4511.12. See Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563,565, reconsideration denied, 83 Ohio St.3d 1453 ("[w]here a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se. * * * Application of negligence per se in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability per se because the plaintiff will also have to prove proximate cause and damages").
 {¶ 32} Campbell, on the other hand, contends that, under the doctrine of primary assumption of risk, Campbell owed no duty to Turner and, therefore, Campbell cannot be found negligent as a matter of law.
 {¶ 33} "Primary assumption of risk `concerns cases where there is a lack of duty owed by the defendant to the plaintiff.' * * * `The term "primary assumption of risk" really translates into no duty, ergo no negligence, and has nothing to do with the doctrine of assumption of risk as a defense against the negligence of a defendant who has a duty to the plaintiff.'" Darling v. Fairfield Med. Ctr. (2001), 142 Ohio App.3d 682,688.
 {¶ 34} See, also, Gallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 431-432, reconsideration denied,75 Ohio St.3d 1412 (discussion of primary assumption of risk). Underlying the doctrine of primary assumption of risk "is the notion that certain risks are so inherent in some activities that they cannot be eliminated. * * * The doctrine rests on the fiction that plaintiff has tacitly consented to the risk, thereby relieving defendant of any duty owed to him." Collier v. Northland Swim Club (1987), 35 Ohio App.3d 35, 37.
 {¶ 35} Here, finding the doctrine of primary assumption of risk applicable, the trial court observed:
 {¶ 36} "From the record in this case, it seems evident that Campbell and Turner willingly agreed to participate in a street race to determine which of their cars was faster. Examining the activity in question, it is obvious that this high-speed race on a public road was inherently dangerous. There are no conditions under which this risk could have been eliminated. Given such circumstances, any duties established by the Ohio Revised Code sections indicated by Marcum are extinguished by the doctrine of primary assumption of risk. As such, Marcum's arguments on this issue are rejected." (Decision and Entry filed July 23, 2002, at 5.)
 {¶ 37} Plaintiff contends, however, the doctrine of primary assumption of risk cannot relieve a party from a statutorily imposed duty because "negligence per se is tantamount to strict liability for purposes of proving that a defendant breached a duty." Chambers at 566. Therefore, according to plaintiff, the trial court erred in applying the doctrine of primary assumption of risk in this case.
 {¶ 38} "Negligence per se and strict liability, however, are not synonymous. Courts view the evidentiary value of the violation of statutes imposed for public safety in three ways: as creating strict liability, as giving rise to negligence per se, or as simply evidence of negligence." Sikora v. Wenzel (2000), 88 Ohio St.3d 493, 495. "Areas where the law typically imposes strict liability include liability for injuries inflicted from a dangerous instrumentality, liability for violations of certain statutes, and liability for injuries caused by a manufacturer, distributor, or vendor of certain products." Id. at 495-496. Furthermore, "[c]ourts generally agree that violation of a statute will not preclude defenses and excuses-i.e., strict liability-unless the statute clearly contemplates such a result." Id. at 496. See, also, id. at 497 ("negligence per se and strict liability differ in that a negligence per se statutory violation may be `excused'").
 {¶ 39} Because a violation of statute generally will not preclude defenses, id. at 496, and a negligence per se statutory violation may be excused, id. at 497, we cannot determine in this case the trial court erred in applying the doctrine of primary assumption of risk.[1]
Consequently, we find unpersuasive plaintiff's contention that, as a matter of law, the doctrine of primary assumption of risk can never be applied to relieve a party from a statutorily imposed duty.
 {¶ 40} Moreover, we agree with the trial court that, based on the evidence, Turner and Campbell willingly agreed to participate in a street race and the subsequent high-speed race on a public road was inherently dangerous. Therefore, under the circumstances of this case, we find the trial court's application of primary assumption of risk was not in error. See Collier at 37 (underlying the doctrine of primary assumption of risk "is the notion that certain risks are so inherent in some activities that they cannot be eliminated").
 {¶ 41} Nevertheless, plaintiff contends that, even assuming primary assumption of risk is applicable to a statutorily imposed duty, a disputed factual issue concerning whether the street race was concluded precludes the granting of summary judgment. For example, if the street race, a competitive event, was concluded, then R.C. 4511.21(A), which requires a motor vehicle operator to stop within the assured clear distance ahead, arguably might apply.
 {¶ 42} Here, Crystal Dunlap, Turner's former fiancée, in deposition testimony stated under oath Campbell collided with Turner within "seconds" after Turner had stopped. (Dunlap depo. at 81, 90, 91.) Even construing this evidence in plaintiff's favor, the trial court reasonably could conclude that Campbell and Turner were in the process of winding up the street race and the street race had not ended. See, e.g., Perrett v. Campbell (Feb. 20, 1996), Stark App. No. 1995CA00063 (concluding, as a matter of law, an injured party was still engaged in a recreational activity after disembarking from a bicycle five minutes earlier). Consequently, even construing the evidence in plaintiff's favor, we are unpersuaded by plaintiff's contention that a disputed material fact exists concerning whether the street race was concluded.
 {¶ 43} Moreover, insofar as the doctrine of primary assumption of risk would have defeated any claim of negligence Turner may have brought against Campbell, if Turner had survived the collision, plaintiff cannot recover pursuant to R.C. 2125.01.
 {¶ 44} See R.C. 2125.01[2] ("[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued, or the administrator or executor of the estate of such person, as such administrator or executor, shall be liable to an action for damages, notwithstanding the death of the person injured and although the death was caused under circumstances which make it aggravated murder, murder, or manslaughter").
 {¶ 45} Accordingly, having found the doctrine of primary assumption of risk applies and this determination results in a lack of duty owed by Campbell to Turner, we overrule plaintiff's first, second, and third assignments of error.
 {¶ 46} Plaintiff's fifth assignment of error asserts the trial court erred in determining Marcum had no coverage under her own uninsured motorist insurance policy.
 {¶ 47} Here, finding plaintiff's claim of uninsured motorist coverage under her automobile insurance policy to be moot, the trial court did not address this issue in its judgment. (Decision at 9.)
 {¶ 48} According to express terms in the uninsured motorist coverage of Marcum's automobile insurance policy, which also included underinsured motorist coverage, Marcum's insurer would "pay compensatory damages, including derivative claims, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury suffered by an insured person." (Marcum Insurance Policy at 5.) Furthermore, as used in this section of the policy, an insured person included a relative of Marcum, which was earlier defined in the policy as including "a person living in your household, related to you by blood, marriage or adoption, including a ward or foster child." (Id. at 3.) Here, according to the record, because Turner was Marcum's son and lived with Marcum at the time of the collision (Marcum depo. at 8, 9, 11); (Dunlap depo. at 62-63), Turner was an insured person under the policy's terms.
 {¶ 49} However, according to Marcum's uninsured motorist coverage:
 {¶ 50} "This coverage does not apply to:
 {¶ 51} "(1) Any insured person while:
 {¶ 52} "(a) operating; or
 {¶ 53} "(b) occupying;
 {¶ 54} "any motor vehicle without a reasonable belief that the insured person is entitled to do so. An insured person whose license has been suspended, revoked, or never issued, shall not be held to have a reasonable belief that the insured person is entitled to operate a motor vehicle." (Marcum Insurance Policy at 6.)
 {¶ 55} Here, according to uncontroverted evidence, at the time of the street race, Turner's driver's license was suspended. (Marcum depo. at 39; Dunlap depo. at 35.) Therefore, under the express terms of Marcum's uninsured motorist coverage, Turner was excluded from coverage.
 {¶ 56} Nevertheless, relying on Gaines v. State Farm Mut. Auto. Ins. Co., Franklin App. No. 01AP-947, 2002-Ohio-2087, plaintiff asserts she is entitled to coverage under the policy, even if Turner himself was excluded from coverage. Plaintiff's argument, however, is unpersuasive.
 {¶ 57} "The purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated." Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 31.
 {¶ 58} In this case, the uninsured coverage agreement of Marcum's automobile insurance policy provides that "[Colonial] will pay compensatory damages, including derivative claims, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury suffered by an insured person." (Marcum Insurance Policy at 5.)
 {¶ 59} However, as discussed above, because plaintiff cannot establish the duty element of her negligence claim due to the application of the doctrine of primary assumption of risk, plaintiff cannot prove negligence, as a matter of law. See, e.g., Darling at 688 (" `[t]he term `primary assumption of risk' really translates into no duty, ergo no negligence"). Therefore, plaintiff cannot demonstrate any legal entitlement to recovery. See, also, former R.C. 3937.18(A)(1), which was in effect at the beginning of the policy period of Marcum's automobile insurance ("an insured is legally entitled to recover damages [under the uninsured motorist coverage] if the insured is able to prove the elements of the insured's claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle").
 {¶ 60} Furthermore, plaintiff's reliance on Gaines is inapposite. In Gaines, when this court concluded the appellant was entitled to coverage under the terms of an automobile insurance policy, the Gaines court construed an exclusion based on a "bodily injury" provision of the insurance policy. Here, our determination is not based on a construal of an exclusion based on "bodily injury"; rather, our determination is based on a different provision that premises coverage on a legal entitlement to recovery. Thus, Gaines is distinguishable.
 {¶ 61} Therefore, although the trial court did not address whether Marcum was entitled to uninsured motorist coverage under the terms of her policy, we find this omission not to be prejudicial to plaintiff because, as a matter of law, plaintiff could not establish negligence and, therefore, plaintiff had no legal entitlement to recovery. Consequently, we overrule plaintiff's fifth assignment of error. See App.R. 12(B) ("[w]hen the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the appellant's brief and that the appellee is entitled to have the judgment or final order of the trial court affirmed as a matter of law, the court of appeals shall enter judgment accordingly").
 {¶ 62} Accordingly, having construed the evidence most strongly in plaintiff's favor, having overruled plaintiff's first, second, third, and fifth assignments of error, and having not considered plaintiff's fourth assignment of error because it pertains to a judgment for which this court lacks jurisdiction, we therefore affirm the judgment of the Franklin County Court of Common Pleas in C.P.C. No. 00CVC11-10408.
Judgment affirmed.
BROWN and KLATT, JJ., concur.
[1] "[P]rimary assumption of risk differs conceptually from the affirmative defenses that are typically interposed in a negligence case. An affirmative defense in a negligence case typically is the equivalent of asserting that even assuming that the plaintiff has made a prima facie case of negligence, the plaintiff cannot recover. A primary assumption of risk defense is different because a defendant who asserts this defense asserts that no duty whatsoever is owed to the plaintiff." Gallagher at 431.
[2] In 1996, Am.Sub.H.B. No. 350 amended R.C. 2125.01 effective January 27, 1997. In State ex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, paragraph three of the syllabus, reconsideration denied, 87 Ohio St.3d 1409, Am.Sub.H.B. No. 350 was declared unconstitutional in toto. Later, in 2001, the pre-Am.Sub.H.B. No. 350 version of R.C. 2125.01 was revived by Am.Sub.S.B. No. 108.