[Cite as *Hensel v. Siegfried Ents., Inc.*, 2021-Ohio-2137.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Sharon Hensel                                    Court of Appeals No.  E-21-002

    Appellant                                    Trial Court No.  2019 CV 0405

v.

Siegfried Enterprises, Inc.                      **DECISION AND JUDGMENT**

    Appellee                                     Decided:  June 25, 2021

* * * * *

Ronald A. Apelt, for appellant.

Jay S. Hanson, for appellee.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This accelerated appeal is before the court from the judgment of the Erie

County Court of Common Pleas, granting summary judgment for appellee, Siegfried

Enterprises, Inc.  For the reasons that follow, we affirm.

## I.     Facts and Procedural Background

{¶ 2} On December 13, 2017, appellant, Sharon Hensel, fell in the parking lot of a McDonald's restaurant, owned by appellee.  Snow and ice covered the parking lot and Hensel fell in a depression near a drain, injuring her right knee.  At the time, it was no longer snowing, but appellee had not plowed the parking lot.  McDonald's employees came to Hensel's aid and called an ambulance, with one employee commenting that Hensel's fall was the third such fall that day.  Hensel's injury required surgery to repair a meniscus tear.

{¶ 3} Hensel filed suit against appellee, alleging negligence in failing to maintain the premises by clearing the snow from the parking lot, and seeking compensation for her injury caused by the fall.  Appellee moved for summary judgment, arguing the snow was a natural accumulation which was open and obvious, negating any duty to warn.  The trial court granted appellee's motion, and this appeal followed.

## II.     Assignments of Error

{¶ 4} Hensel challenges the trial court's judgment, asserting the following assignments of error:

1.     The Trial Court erred in granting Defendant Siegfried Enterprises, Inc.'s Motion for Summary Judgment since genuine issues of material fact existed demonstrating that Defendant Siegfried Enterprises, Inc. breached its duty of care to Plaintiff Sharon Hensel

2.

since it had knowledge of a hazardous condition and failed to warn her about it.

2. The Trial Court erred in granting Defendant Siegfried Enterprises, Inc.'s Motion for Summary Judgment since genuine issues of material fact existed demonstrating that any reliance on the 'Open and Obvious' defense was inapplicable to the facts of the present case.

### III. Analysis

{¶ 5} Hensel challenges the grant of summary judgment in appellee's favor, arguing issues of fact regarding a duty to warn and the "open and obvious" defense. As the issue of "duty" is broader than the open and obvious doctrine where the hazard consists of snow and ice, we address Hensel's assigned errors together, applying the correct legal standard.

{¶ 6} We review a trial court's decision to grant summary judgment de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). To merit summary judgment, the moving party bears the burden of showing "that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed

3.

most strongly in his [or her] favor." *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978).

{¶ 7} If the moving party fails to satisfy this initial burden, a trial court must deny summary judgment. "However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶ 8} Here, appellee presented evidence in support of summary judgment on Hensel's negligence claim, consisting of Hensel's deposition testimony, to demonstrate that Hensel was aware of snow and ice in the parking lot on the date of her fall. Hensel does not dispute or distinguish her testimony, instead arguing that – notwithstanding the general rule that there is no duty to remove natural accumulations of ice and snow or warn of any associated dangers – appellee had a duty to address an unnatural accumulation that created a substantially more dangerous condition than a business invitee should have expected. In the alternative, Hensel argues that, because the snow and ice covered the entire parking lot, she had no way to avoid the hazard which caused her fall, and the drive-thru traffic constituted an "attendant circumstance" which caused her to use a different path back to her car and resulted in her fall near a depressed area over a drain.

4.

{¶ 9} In a negligence action, a plaintiff must demonstrate a duty of care owed by a defendant to plaintiff, defendant's breach of that duty of care, and plaintiff's injury as a direct and proximate result of defendant's breach. *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). Generally, a business owner owes a duty to maintain premises in a "reasonably safe condition for the protection of business invitees." *Miller v. Tractor Supply Co.,* 6th Dist. Huron No. H-11-001, 2011-Ohio-5906, ¶ 7, citing *Darling v. Fairfield Med. Ctr.,* 142 Ohio App.3d 682, 684-685, 756 N.E.2d 754 (5th Dist.2001). There is no duty, however, to protect a business invitee from natural accumulations of ice and snow, subject to certain, limited exceptions, dubbed the "no-duty winter rule." *Miller* at ¶ 8, citing *Brinkman v. Ross,* 68 Ohio St.3d 82, 83-84, 634 N.E.2d 1175 (1993); *Bowen v. Columbus Airport Ltd. Partnership,* 10th Dist. Franklin No. 07AP-108, 2008-Ohio-763, ¶ 11 (additional citations omitted.).

{¶ 10} "The underlying rationale for the no-duty winter rule 'is that everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow.'" *Miller* at ¶ 9, quoting *Brinkman* at 84. This rationale extends beyond the "open and obvious" rule, which requires consideration of the ability of the parties to observe and appreciate the danger; the no-duty winter rule applies without regard to which party "has superior knowledge or

5.

a better appreciation" of the risks posed by a natural accumulation of ice and snow. *Miller* at ¶ 9.

{¶ 11} Two exceptions to this rule are a business owner's active negligence in creating an *unnatural* accumulation and instances in which a business owner has actual or implied notice of an accumulation that conceals a hidden danger. *Miller* at ¶ 10-11, citing *Bowen*, 2008-Ohio-763 at ¶ 11; *Debie v. Cochran Pharmacy-Berwick, Inc.,* 11 Ohio St.2d 38, 227 N.E.2d 603 (1967), paragraph one of the syllabus (additional citations omitted.).

{¶ 12} Hensel first argues an exception based on an unnatural accumulation of ice and snow, and appellee's notice of conditions based on the prior falls by others walking in the parking lot that day. In support, Hensel argues that the numerous complaints of snow and ice in the parking lot, and the falls by other people, are evidence of notice of unnatural accumulations and a dangerous condition, requiring action. However, Hensel provides no argument and points to no evidence, demonstrating an unnatural accumulation of snow and ice.

{¶ 13} An unnatural accumulation is, by definition, "manmade" or "man-caused." *Bryant v. Indus. Power Systems, Inc.,* 2018-Ohio-174, 111 N.E. 3d 827, ¶ 13 (6th Dist.), citing *Porter v. Miller,* 13 Ohio App.3d 93, 96, 468 N.E.2d 134 (6th Dist.1983). Thus, the accumulation must result from causes or factors "*other than* the inclement weather

6.

conditions of low temperature, strong winds and drifting snow[.]" (Emphasis sic.) *Bryant* at ¶ 13, citing *Porter* at 96.

{¶ 14} In this case, Hensel argues that appellee did nothing at all beyond permitting the natural accumulation of snow and ice to remain in the parking lot. In her deposition testimony, Hensel described the snow and ice in the following exchange:

Q. * * * So when you left the restaurant, was anything different with the condition of the parking lot from when you walked into the restaurant?

A. No, it was not.

Q. Can you describe the snow covering, like how – was it deep? Was it just packed down snow? How was it?

A. Well, the whole parking lot was covered. You couldn't see the ground of the parking lot at all.

Q. Okay. But was it – were there drifts of snow? Was it packed down snow? Was it pushed aside snow?

A. No. There was no pushed aside snow. I wouldn't say it was packed down snow either.

Q. Okay. Can you give me an idea of how deep the snow was?

A. Oh, probably about like this.

7.

Q.      All right.  You're indicating about three inches of snow?

A.      Well, I don't know.  I mean, I don't know how to, you know, really measure.

Q.      Well, what you're showing me looks like about two to three inches?

A.      Okay.  Then, yeah, probably about that.

{¶ 15} Hensel identified no man-made change to the accumulation, and presented no evidence demonstrating an unnatural accumulation.  We have previously found that a failure to remove snow and ice does not transform a natural accumulation into an unnatural one.  *See Porter* at 95 (claim that landlord "never cleared away snow and ice" did not establish an unnatural accumulation to preclude summary judgment).  Therefore, while Hensel seeks to demonstrate negligence through the unnatural accumulation exception to the no-duty winter rule, we find no basis to apply this exception.

{¶ 16} Hensel next argues that the snow and ice covered the entire parking lot, giving her no choice in avoiding the hazard, and she claims the traffic coming from the drive-thru window acted as an attendant circumstance.  Additionally, Hensel argues that the snow covered a depressed drain in the area in which she believes she fell.

{¶ 17} As to the snow-covered parking lot, we note that the no-duty winter rule applies, and Hensel is deemed to know and appreciate the risk of ice and snow.  Based on

8.

her testimony, Hensel did appreciate the risk and she testified that, on the date of the fall, she wore snow boots with a tread because of the icy and snowy conditions.  There is also no evidence, in the record, to support her claim of "attendant circumstances" based on drive-thru traffic, beyond the fact she changed her return path, after exiting the restaurant, because a car was parked and waiting for an order where she previously walked.  Additionally, Hensel testified:

> Q.      Had anything changed when you walked in, as far as the surface covering?
>
> A.      No.
>
> Q.      How far did you get back to – or how far into the parking lot did you get when you slipped?
>
> A.       Maybe halfway to the car.
>
> Q.      Okay.  So you got – so were you actually in the parking lot?
>
> A.      Yes.
>
> Q.      Okay.  And what did you slip on?
>
> A.      Snow, ice.
>
> Q.      Snow and ice?
>
> A.      Yes.
>
> Q.      And did you have anything in your hands?  Did you have a drink in your hand that you hadn't maybe finished at McDonalds?

9.

A. No.

Q. All right. Did you have a purse?

A. No.

Q. So you were carrying nothing?

A. Correct.

Q. Were you holding onto Albert's arm by any chance?

A. Yes, I was actually.

Q. And why was that?

A. Because of the snow.

{¶ 18} As to hidden dangers, Hensel did not indicate the snow and ice concealed a hazard that led to her fall. Instead, Hensel testified that she went back to the parking lot about a month later and photographed the area where she slipped and fell. Referring to the photographs, Hensel testified that she fell where the parking lot dips down a bit, near a drain, but did not indicate any hidden danger. Instead, she testified regarding a visible depression, as follows:

Q. Okay. Was the drain covered as well?

A. Yes, it was.

Q. Okay. Was it covered enough that the dip was leveled out a little bit?

A. I wouldn't say it was leveled out, no.

{¶ 19} Based on her testimony, the only hazard Hensel connected to her fall was the ice and snow on the surface of the parking lot. While she also argues that appellee had knowledge of this danger, such knowledge is matched by her own, exhibited by her conduct in wearing treaded, winter boots and holding onto her friend for support as she crossed the icy, snowy lot. Equal knowledge of the hazards of ice and snow negate the unknown risk exception of the no-duty winter rule. *See e.g. Jackson v. J-F Ents., Inc.,* 6th Dist. Lucas No. L-10-1285, 2011-Ohio-1543, ¶ 20 ("Where an owner and an invitee have equal knowledge of snow and ice on the premises, this exception to the open and obvious rule cannot be supported.").

{¶ 20} Accordingly, considering the argument, the evidence, and applicable law, we find the no-duty winter rule applies in this case, with no exception based on an unnatural accumulation or a hidden danger, known to appellee. We therefore find appellant's assignments of error not well-taken, and affirm the judgment of the trial court.

## IV.    Conclusion

{¶ 21} Finding substantial justice has been done, we affirm the judgment of the Erie County Court of Common Pleas. Appellant, Sharon Hensel, is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                             JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, P.J.               _____
CONCUR.                                       JUDGE

                                  _____
                                             JUDGE


This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.